OPINION OF THE COURT
Martin Schneier, J.
*1138 The primary issue presented here is whether the plaintiff had assumed the risk of injury and was the sole proximate cause of his accident when, in a service station, in order to clean his windshield, he stood on the mechanical lift on which his taxicab was positioned to have its oil changed, and was speaking to his wife on his cell phone when the mechanic raised the lift. Plaintiff finished his telephone conversation, stepped back and fell down causing his injury. Plaintiff did not know that the lift had been raised. The mechanic was unaware that plaintiff was on the lift when he raised it.
Under these facts this is an issue of first impression in New York State.
Plaintiff, Amdreas Fourtounis, commenced this personal injury action alleging that his accident was caused by the negligence of defendant, MJB Service Station, Inc. MJB moves for summary judgment pursuant to CPLR 3212 dismissing the complaint.
Background
The facts are essentially uncontroverted. On November 25, 2006, plaintiff took his taxicab to MJB Service Station to get his heating system repaired. Jovanni Salgado, a mechanic working for MJB, drove the taxi onto a mechanical lift. Although the lift was not elevated, it was, nonetheless, approximately one foot above the floor. While Salgado was working on the heater, Fourtounis requested that the oil and antifreeze be changed.
Salgado completed the heater repair and began cleaning the inside of the windshield. Fourtounis requested that Salgado give him the windex spray bottle so that he could clean the outside of the windshield. Salgado gave Fourtounis the windex and Fourtounis stepped onto the lift and began cleaning the windshield. Fourtounis then answered a call on his cell phone and began a conversation with his wife while still standing on the lift. Salgado, unaware that Fourtounis was now on the lift, elevated it to approximately five to six feet off the ground so that he could drain the fluids. Fourtounis, unaware of his change in elevation, concluded his phone call and stepped backwards, falling the five to six feet to the floor, sustaining injuries.
Discussion
Summary judgment is a drastic remedy that should only be employed when there is no doubt as to the absence of any triable issues of material fact (Kolivas v Kirchoff, 14 AD3d 493 [2d Dept 2005]). “Issue finding, rather than issue determination, is *1139 the court’s function. If there is any doubt about the existence of a triable issue of fact or if a material issue of fact is arguable, summary judgment should be denied” (Celardo v Bell, 222 AD2d 547, 548 [2d Dept 1995] [citations omitted]).
The party moving for summary judgment has the initial burden of coming forward with admissible evidence that establishes the absence of a material issue of fact (CPLR 3212 [b]; GTF Mktg. v Colonial Aluminum Sales, 66 NY2d 965, 968 [1985] ). However, once the moving party has satisfied this obligation, the burden shifts; “the party opposing the motion must demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action” (Zuckerman v City of New York, 49 NY2d 557, 560 [1980]).
MJB argues that it is entitled to summary judgment dismissing plaintiffs complaint “on the grounds that the plaintiff assumed the risk of injury by voluntarily placing himself on the mechanical lift” and “the plaintiff’s negligence is the sole proximate cause of the accident” (defendant’s affirmation and reply affirmation in support).
Prior to the enactment of the comparative negligence statute (CPLR 1411) assumption of risk was an absolute bar to a plaintiffs negligence action. After the enactment of this statute, the doctrine of assumption of risk does not necessarily constitute a complete bar to liability by the defendant and its application is generally a question of fact to be resolved by a jury. Assumption of risk is not an absolute defense but a measure of the defendant’s duty of care and thus has survived the enactment of the comparative fault statute (Turcotte v Fell, 68 NY2d 432 [1986]; Weaver v Trackey, 272 AD2d 705 [3d Dept 2000]).
Although assumption of risk is no longer treated as an absolute defense,
“it still helps and serves to define the standard of care under which a defendant’s duty is defined and circumscribed ‘because assumption of risk in this form is really a principle of no duty, or no negligence and so denies the existence of any underlying cause of action. Without a breach of duty by the defendant, there is thus logically nothing to compare with any misconduct of the plaintiff ” (Morgan v State of New York, 90 NY2d 471, 485 [1997] [emphasis omitted], quoting Prosser and Keeton, Torts § 68, at 496-497 [5th ed]; Cotty v Town of Southampton, 64 AD3d 251 [2d Dept 2009]).
*1140 The assumption of risk doctrine provides that voluntary participants in activities where there is a heightened risk of danger “may be held to have consented, by their participation, to those injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation” (Turcotte at 439). Although assumption of risk occurs most often during participation in leisure and sporting events, such participation is not a prerequisite. Assumption of risk cases that do not involve sporting or leisure activities may occur when the plaintiff is injured by either the active conduct of the defendant or its agents or by the passive conduct of the defendant as landowner.
An example of the plaintiff being injured through the defendant’s active conduct occurred in Watson v State of New York (52 NY2d 1022 [1981]). In Watson, the plaintiff alleged that he was injured during a physical altercation with his teacher. The Court of Appeals ruled that, because the plaintiff had assaulted the teacher, he was barred from recovery by virtue of the doctrine of assumption of risk, since he, by assaulting his teacher, had assumed the risks of any injuries which may have foreseeably occurred (id. at 1022-1023).
Also, in Westerville v Cornell Univ. (291 AD2d 447, 447 [2d Dept 2002]), “[t]he plaintiff, a mental health care professional attending a training seminar administered by the appellant, allegedly injured her left knee while being restrained by another attendee during a practice session designed to teach physical restraint techniques to control agitated patients.” The Second Department ruled that the plaintiff was well aware of the risk of injury inherent in this dangerous training exercise activity, had assumed this risk of injury and, thus, was barred from recovery.
Sy v Kopet (18 AD3d 463 [2d Dept 2005]) is an example of a case where the injury was caused by the defendant’s passive conduct as a landowner. In Sy, the defendant barred the plaintiff from entering his second floor boarding room because he had failed to pay the rent. The plaintiff was injured when he attempted to enter his second floor room by climbing window guardrails and a gutter on the outside of the house. The Court found that plaintiff had assumed the risk of injury and was barred from recovery.
The common element to both categories of these cases is that the plaintiff voluntarily placed himself in a hazardous situation that relieved the defendant of any duty of care and was the sole *1141 proximate cause of plaintiffs injury. In the instant case, the plaintiff undoubtedly placed himself in a hazardous position. This did not, however, relieve Salgado of his duty of care owed by him to the plaintiff in his operation of the mechanical lift. Because Salgado owed a duty of care to the plaintiff, whose presence in the garage and near the lift he was aware of, the defendant has failed to meet its prima facie burden of demonstrating its entitlement to summary judgment.
Defendant also argues that the plaintiffs negligence was the sole proximate cause of the accident. An issue of fact exists as to whether the defendant was negligent and whether any such negligence was a substantial factor in causing the accident.
Conclusion
Based on the foregoing, the defendant’s motion for summary judgment is denied.