**Affirmed and Memorandum Opinion filed February 6, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00650-CV

---

## PAUL Z. POCHRON AND DEBORAH POCHRON, Appellants

### V.

## LAWRENCE S. OLEKSY, Appellee

---

**On Appeal from the 434th Judicial District Court
Fort Bend County, Texas
Trial Court Cause No. 08-DCV-164803**

---

## M E M O R A N D U M   O P I N I O N

Paul Z. and Deborah Pochron appeal a take-nothing judgment rendered against them in their personal injury lawsuit against Lawrence S. Oleksy. We affirm.

### BACKGROUND

This case arises out of a snowmobiling accident that occurred in upstate New York. Paul Pochron, Lawrence Oleksy, Mike Brehm, Scott Buyea, and John

Donovan frequently operated snowmobiles together. All except Oleksy were highly experienced snowmobile drivers.

The five riders departed from Brehm's sister's house on February 2, 2007, and rode during the morning without incident. At some point in the afternoon, Oleksy passed the rider between himself and Pochron; in so doing, Oleksy ran into the side of Pochron's snowmobile. Pochron suffered severe fractures of his tibia and fibula as a result of the impact.

Pochron and his wife sued Oleksy, individually and d/b/a Richland Construction, on June 16, 2008. Paul Pochron sued for damages as a result of bodily injuries; Deborah Pochron sued for loss of consortium and loss of household services. Oleksy filed an unopposed motion for choice-of-law determination and judicial notice of New York law. The trial court signed an order determining that New York law would govern the substantive issues of the case.

A jury trial was held beginning July 26, 2011. The jury found that Oleksy was negligent, and that his negligence was a proximate cause of Paul Pochron's injuries. The jury awarded the following sums to Paul Pochron: (1) $10,000 for past physical pain and mental anguish; (2) $0 for future physical pain and mental anguish; (3) $71,000 for past loss of earning capacity; (4) $5,000 in lost future earning capacity for five years; (5) $0 for past disfigurement; (6) $0 for future disfigurement; (7) $0 for past physical impairment; (8) $0 for future physical impairment; and (9) $38,380.76 for medical expenses. The jury also determined that Deborah Pochron should receive nothing for loss of consortium and loss of household services.

The trial court also submitted a separate question addressing the affirmative defense of "primary assumption of risk" under New York law. Question 7 stated:

2

> Voluntary participants in sports or recreational activities consent to those commonly appreciated risks which are inherent in and arise out of the nature of the activity generally and flow from such participation.
>
> Awareness of the risk is to be assessed against the background of the skill and experience of the particular participant. It is not necessary for the participant to have foreseen the exact manner in which his injury occurred, so long as he is aware of the potential for injury of the mechanism from which injury results.
>
> Participants do not consent to conduct that is reckless, intentional or that creates a risk over and above the usual dangers inherent in the activity.
>
> Do you find that Paul Pochron assumed the risk of the occurrence in question and consented to that risk by engaging in snowmobiling on February 2, 2007?

The jury answered "yes" to Question 7. Oleksy filed a motion asking the trial court to sign a take-nothing final judgment based on the jury's "yes" answer to Question 7. The trial court did so, and the Pochrons now appeal from the trial court's take-nothing judgment.

## ANALYSIS

The Pochrons raise ten issues on appeal. Because the tenth issue addressing the "primary assumption of risk" doctrine is dispositive, we address it first.[1]

## I.     "Primary Assumption of Risk" Doctrine

In their tenth issue on appeal, the Pochrons attack Question 7 on three grounds: (1) the trial court erred in allowing the "primary assumption of risk" question to be included in the jury charge; (2) the trial court erred in failing to disregard the jury's "yes" answer to Question 7 because this doctrine "does not and should not bar recovery where the Defendant engaged in conduct that was

---

[1] Issues one through nine focus on the sufficiency of the evidence to support the answers to a jury question asking whether Oleksy was acting in the course and scope of his employment, and to jury questions addressing various categories of damages.

determined by the jury to be negligent;" and (3) the evidence is legally insufficient to support the jury's "yes" answer to Question 7.[2]

## A.    Charge Error

The Pochrons assert that "the trial court erred in allowing the 'primary assumption of risk' question to be included in the jury charge." We review a trial court's formulation of the jury charge under an abuse of discretion standard. *See Thota v. Young*, 366 S.W.3d 678, 693 (Tex. 2012). Because this contention assails the trial court's formulation of the jury charge, we look to objections made at the charge conference.

The Pochrons preserved two objections to Question 7 during the charge conference: (1) "primary assumption of risk" is not applicable as a matter of law because "the snowmobiling that the Plaintiff and Defendant were engaged [in] is not an activity for which assumption of the risk applies;" and (2) Oleksy's "statutory duty to follow the applicable laws relating to the safe operation of his snowmobile cannot be limited by the primary assumption of risk doctrine." The trial court overruled these charge objections.

Addressing the Pochrons' first charge objection requires some background discussion regarding New York law. When the New York legislature enacted the Civil Practice Law and Rules in 1975, it abolished contributory negligence and

---

[2] In response to the Pochrons' tenth issue on appeal, Oleksy asserts that the Pochrons waived any argument that the "primary assumption of risk" doctrine does not apply because they did not oppose Oleksy's motion for choice-of-law determination and judicial notice of New York law. *See* Tex. R. Evid. 202. We reject this waiver contention because the Pochrons do not contest the application of New York law. Instead, the Pochrons contend that the "primary assumption of risk" doctrine recognized under New York law does not foreclose recovery under the specific facts of this case.

4

assumption of risk as absolute defenses in favor of comparative risk. *See* N.Y. C.P.L.R. 1411 (McKinney 1975). The relevant provision of the Civil Practice Law and Rules states:

> In any action to recover damages for personal injury, injury to property, or wrongful death, the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages.

*Id.*

Despite this provision, New York courts "have held that a limited vestige of the assumption of the risk doctrine — referred to as 'primary' assumption of the risk — survived the enactment of CPLR 1411 as a defense to tort recovery in cases involving certain types of athletic or recreational activities." *See Custodi v. Town of Amherst,* 980 N.E.2d 933, 935 (N.Y. 2012). Instead of acting as a complete defense, "primary assumption of risk" potentially limits the scope of any otherwise applicable duty to exercise reasonable care. *See Trupia ex rel. Trupia v. Lake George Cent. Sch. Dist.*, 927 N.E.2d 547, 548-49 (N.Y. 2010). Under this approach, a plaintiff who accepts a known risk "negates any duty on the part of the defendant to safeguard him or her from the risk." *Id.* at 548. The "primary assumption of risk" doctrine applies to recreational activities as well as sporting activities because such activities have great social value. *Custodi*, 980 N.E.2d at 935.

"Primary assumption of risk" applies when a voluntary participant "is aware of the risks which are inherent in and arise out of the nature of the sport generally and flow from such participation." *Pantalone v. Talcott,* 861 N.Y.S.2d 166, 167 (N.Y. App. Div. 2008). The duty owed in connection with such activities is "a

duty to exercise care to make the conditions as safe as they appear to be." *Custodi*, 980 N.E.2d at 935. Participants in athletic and recreational activities do not consent to conduct that is reckless, intentional, or so negligent as to create an unreasonably increased risk. *See id.*

The Pochrons contend that "primary assumption of risk" does not apply in this case because snowmobiling is not the type of activity covered by the doctrine. They support this assertion by citing *Trupia ex rel. Trupia*, 927 N.E.2d at 547.

In *Trupia*, an unsupervised eleven-year old boy was injured while sliding down a bannister at school. *Id.* at 548. The New York Court of Appeals declined to apply the "primary assumption of risk" doctrine; it stated that the doctrine "must be closely circumscribed if it is not seriously to undermine and displace the principles of comparative causation." *Id.* at 547. The court concluded that the injury-causing activity at issue in that case — horseplay — was not significant enough to insulate the school district from a breach of duty claim. *Id.*

Unlike *Trupia*, this case does not involve horseplay or children. Instead, the plaintiff in this case was an adult engaged in snowmobiling. Unlike horseplay, the "primary assumption of risk" doctrine has been applied to snowmobiling. *See Haider v. Zadrozny,* 876 N.Y.S.2d 215, 216 (N.Y. App. Div. 2009) ("[T]he doctrine of primary assumption of risk completely bars recovery to one who is injured during his or her voluntary participation in a sport or recreational activity such as riding upon or being towed behind a snowmobile."). We conclude that the doctrine applies in this case, and that a collision with another snowmobile driver is a risk inherent in snowmobiling. *Cf. Zielinski v. Farace*, 737 N.Y.S.2d 199, 200 (N.Y. App. Div. 2002) (risk of injury caused by another skier is an inherent risk of downhill skiing).

Turning to the second charge objection, the Pochrons assert that Oleksy's "statutory duty to follow the applicable laws relating to the safe operation of his snowmobile cannot be limited by the 'primary' assumption of the risk doctrine." *See* N.Y. PARKS REC. & HIST. PRESERV. § 25.03(2) (McKinney 2006) (It is unlawful for any person to drive a snowmobile "in a careless, reckless or negligent manner so as to unreasonably endanger the person or property of another or to cause injury or damage thereto.") In other words, the Pochrons contend that if a defendant violates the New York statute governing the operation of snowmobiles, then the "primary assumption of risk" doctrine does not apply.

The Pochrons do not offer and we have not found any case law to support this contention. To the contrary, New York case law indicates that application of the "primary assumption of risk" doctrine is not foreclosed if a defendant violates a New York law concerning snowmobiling. *See Pantalone*, 861 N.Y.S.2d at 167 (holding that a fact issue existed, requiring a jury to determine the application of the doctrine of assumption of risk, when a defendant snowmobile driver violated section 25.03 by speeding).

For these reasons, we overrule the Pochrons' tenth issue insofar as it is based on asserted charge error.

## B.    Materiality of Question 7

The Pochrons also argue that the trial court erred in failing to disregard the jury's "yes" answer to Question 7 because the "primary assumption of risk" doctrine "does not and should not bar recovery where the Defendant engaged in conduct that was determined by the jury to be negligent." We construe this as an argument that the jury's "yes" answer to Question 1 as to Oleksy's negligence made the jury's "yes" answer to Question 7 immaterial. A jury question is

immaterial when it should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994); *Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 90 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A jury question also is considered immaterial when its answer cannot alter the effect of the verdict. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995). The Pochrons raised this contention in their motion for judgment notwithstanding the verdict, which the trial court denied.

If ordinary negligence forecloses the applicability of "primary assumption of risk" under New York law, then it is hard to envision a scenario in which "primary assumption of risk" would continue to be a viable doctrine. *See Martin v. Fiutko*, 801 N.Y.S.2d 236, 237 (N.Y. Sup. Ct. 2005), *aff'd as modified*, 811 N.Y.S.2d 250 (N.Y. App. Div. 2006) ("However, if ordinary negligence is included in the standard to overcome plaintiff's primary assumption of risk, the court questions when, if ever, would primary assumption of risk be a complete bar to plaintiff's claim?"). New York courts have concluded that ordinary negligence does not preclude the application of the "primary assumption of risk" doctrine. *See Turcotte v. Fell*, 68 N.Y.2d 432, 443, 502 N.E.2d 964, 971 (N.Y. 1986) (Despite defendant's violation of a New York law prohibiting foul riding, plaintiff jockey assumed the risk of being bumped into by a horse during a race or exhibition.); *Anand v. Kapoor*, 877 N.Y.S.2d 425, 429 (N.Y. App. Div. 2009) *aff'd*, 942 N.E.2d 295 (N.Y. 2010). ("[E]ven assuming that the defendant was negligent in failing to ascertain precisely where the other members of his party were before hitting the ball, or that they were close enough to the intended line of flight of his ball to require him to call out a warning, such carelessness does not rise to the level of creating a dangerous condition over and above the usual dangers inherent in

8

participating in the sport of golf."). Instead, a plaintiff must demonstrate that the defendant's conduct was "reckless, intentional or so negligent as to create an unreasonably increased risk." *Pantalone*, 861 N.Y.S.2d at 167; *see also Custodi*, 980 N.E.2d at 935 ("[P]articipants are not deemed to have assumed risks resulting from the reckless or intentional conduct of others, or risks that are concealed or unreasonably enhanced."); *but see Duncan v. Kelly*, 671 N.Y.S.2d 841, 842 (N.Y. App. Div. 1998) ("[A] recovery by plaintiff may be predicated upon a showing of ordinary negligence on defendant's part.").

The Pochrons note that the jury charge defined negligence as follows as to Oleksy:

- "[F]ailure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances;"

- "[O]perating a snowmobile at a rate of speed greater than reasonable or proper under the surrounding circumstances provided;" and

- "[O]perating a snowmobile in a careless, reckless, or negligent manner, so as [to] unreasonably endanger the person or property of another or to cause injury or damage thereto."

The jury charge also defined ordinary care as the "degree of care that would be used by a person of ordinary prudence under the same or similar circumstances." In light of these definitions, they contend the jury found that Oleksy's conduct was reckless when the jury answered "yes" to Question 1; therefore, they contend that the "primary assumption of risk" doctrine is not applicable to foreclose a claim

based on Oleksy's reckless conduct. *See generally Sw. Key Program, Inc. v. Gil-Perez*, 81 S.W.3d 269, 271-72 (Tex. 2002) (surveying liability standards nationally for sports-related injuries).

Even if it is assumed for argument's sake that "reckless" conduct would foreclose application of "primary assumption of risk" under New York law, conduct that is negligent because it amounts to a failure to exercise ordinary care does not. *See Anand*, 877 N.Y.S.2d at 429; *Martin*, 801 N.Y.S.2d at 237. We reject the Pochrons' contention because the court submitted multiple alternative theories of negligence without objection in a broad form jury charge. Only one referenced "reckless" conduct, and the jury was not required to accept that definition in order to answer "yes" to Question 1. Thus, although the jury charge contained a definition of negligence that referenced "reckless" conduct, the jury could have relied on one of the alternative theories of negligence and found that Oleksy's conduct amounted to a failure to use ordinary care.

We conclude that the jury's "yes" answer to Question 1 as to Oleksy did not render the jury's "yes" answer to Question 7 immaterial or make the "primary assumption of risk" doctrine inapplicable. We reject the Pochrons' tenth issue insofar as it is based on the trial court's asserted error in failing to disregard the jury's "yes" answer to Question 7 in light of the "yes" answer to Question 1.

## C.    Sufficiency of the Evidence

The Pochrons assert in their reply brief that the evidence is legally insufficient to support the jury's "yes" answer to Question 7. This complaint is not preserved for our review because the Pochrons did not raise it in their original appellate brief. *See* Tex. R. App. P. 38.3; *Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (An appellant is not allowed

to include an issue in a reply brief that was not raised in the appellant's original brief.).

Accordingly, we overrule the Pochrons' tenth issue.

## CONCLUSION

Because the Pochrons' tenth issue is dispositive, we need not address their remaining issues. We affirm the trial court's judgment.

/s/  William J. Boyce
    Justice

Panel consists of Justices Boyce, Christopher, and Brown.

11